J-S63038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KAREN ELIZABETH RAMM, | |
| Appellee | No. 308 MDA 2014 |

Appeal from the Order Entered January 27, 2014
in the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-CR-0000555-2012

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED FEBRUARY 26, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the trial court's order dismissing multiple counts of forgery and identity theft[1] brought against Appellee, Karen Elizabeth Ramm, as time-barred by the statute of limitations.  We affirm.

The charges against Appellee stem from a series of loans she processed and closed through Metro Bank (formerly Commerce Bank) from 2001-2004 while she worked at the bank as a branch manager and loan officer.  Appellee obtained the loans using the name of her former domestic

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 4101(a)(2) and 4120(a), respectively.

partner, Lori Sanders. The trial court accurately summarized the loans as follows:

a. Loan 8082 [Loan 1], a $129,000.00 bridge loan, closed on 13 September 2001, with bank approval and paid in full on 6 December 2001;

b. Loan 8179 [Loan 2], a $130,357.13 home equity loan (HEL), closed on 26 October 2001, with no approval found and paid in full on 3 February 2003;

c. Loan 6131 [Loan 3], a $25,000.00 HEL, also closed on 26 October 2001, without bank approval and paid in full on 3 February 2003;

d. Loan 8909 [Loan 4], a $50,000.00 HEL, closed on 1 July 2002, with bank approval and paid in full on 18 June 2004;

e. Loan 9257 [Loan 5] a $239,000.00 HEL, closed on 3 February 2003, without bank approval;

f. Loan 6669 [Loan 6] a $50,000.00 HEL closed on 1[9] February 2002, and increased to $65,000 on 11 August 2003, without and with bank approval, respectively;

g. Loan 5095 [Loan 7] a $25,000.00 business loan, closed on 18 July 2003, and increased to $75,000.00 on 19 February 2004, both with bank approval.

(Trial Court Opinion, 1/27/14, at 1-2 (summarizing Commonwealth's Exhibit 4)).

Appellee and Sanders ended their relationship in 2004. On June 26, 2004, they signed a separation and settlement agreement (Agreement). The Agreement identified the amount of the loans and the associated loan numbers. After signing the Agreement, Appellee regularly sent Sanders approximately $1,800.00 per month towards the loan payments. Sanders then made the payments in her name.

In April and May of 2010, Sanders consulted a bankruptcy attorney, and acting on her attorney's advice, she instructed Appellee to stop making payments on the loans. Sanders also requested and obtained documents relating to the loans from the bank. Upon receipt of the loan documents, Sanders observed that the signatures purporting to be hers on the documents were not hers. She contacted police and reported that Appellee had forged her signature on the documents. On June 11, 2010, Appellee resigned from the bank. On June 14, 2010, Sanders filed affidavits of forgery with respect to the last five loans listed above.[2]

On January 20, 2012, Detective R.G. Smith filed a police criminal complaint charging Appellee with six counts of forgery, alleging that she obtained the loans in Sanders' name without her permission by forging her signature. On February 28, 2012, the complaint was amended to include two counts of identity theft. On October 9, 2012, Appellee filed a motion to dismiss the charges as time-barred by the statute of limitations. The Commonwealth filed a response on October 25, 2012. The trial court held a hearing on the motion to dismiss on February 4, 2013. On January 27, 2014, the court entered its order and opinion granting Appellee's motion and

---

[2] Sanders had given Appellee permission to process three loans and she personally signed some of the loan documents. (**See** N.T. Preliminary Hearing, 2/28/12, at 76).

dismissing all charges against her as time-barred by the statute of limitations.[3]  This timely appeal followed.[4]

The Commonwealth raises one question for our review:

> Did the [trial] court err in dismissing this case because [Appellee] engaged in conspiracy-like conduct which prevents the running of the statute of limitations and, further, a legislative purpose to prohibit a continuing course of conduct plainly appears in the [f]orgery statute?

(Commonwealth's Brief, at 4).

"A question regarding the application of the statute of limitations is a question of law." ***Commonwealth v. Riding***, 68 A.3d 990, 993 (Pa. Super. 2013) (*en banc*).  "Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." ***Id.*** "Statutes of limitations [must be] liberally construed in favor of the defendant and against the Commonwealth." ***Commonwealth v. Cardonick***, 292 A.2d 402, 407 (Pa. 1972) (citations omitted).

In its sole issue on appeal, the Commonwealth argues that the trial court erred in dismissing the forgery charges against Appellee as time-

---

[3] The court initially prepared an order granting Appellee's motion on May 31, 2013, but it did not file the order at that time.  (***See*** Order, 1/27/14, at 1 (explaining that search of docket failed to show any recording of May 31, 2013 order)).

[4] Pursuant to the trial court's order, the Commonwealth filed a timely concise statement of errors complained of appeal on March 5, 2014.  The trial court filed a Rule 1925(a) opinion on April 16, 2014.  ***See*** Pa.R.A.P. 1925.

barred by the statute of limitations.[5] (**See** Commonwealth's Brief, at 11).

Relying on this Court's decision in **Commonwealth v. Fisher**, 682 A.2d 811

(Pa. Super. 1996), *appeal denied*, 687 A.2d 376 (Pa. 1996) and section

5552(d) of the Judicial Code, the Commonwealth argues Appellee's

conspiracy-like conduct tolled the five-year statute of limitations period.

(**See** Commonwealth's Brief, at 11-18).  Specifically, it maintains that

Appellee's actions were analogous to a conspiracy because she was a loan

officer with control over the loans, and she engaged in deception to prevent

discovery of the forgeries.  (**See id.** at 10-11, 15-16).  It asserts that, since

Sanders discovered the forgeries in 2010, the statute of limitations does not

expire until 2015.  (**See id.** at 11).  We disagree.

Under the Pennsylvania Crimes Code, "[a] person is guilty of forgery if,

with intent to defraud or injure anyone, or with knowledge that he is

facilitating a fraud or injury to be perpetrated by anyone, the actor . . .

makes, completes, executes, authenticates, issues or transfers any writing

so that it purports to be the act of another who did not authorize that act . .

. [.]"  18 Pa.C.S.A. § 4101(a)(2).  "The Commonwealth [is] thus required to

prove that: 1) there was a false writing; 2) the instrument was apparently

capable of deceiving and working an injury to another; and 3) appellant

_____

[5] The Commonwealth does not address the identity theft charges, which
have a two-year statute of limitations period. (**See** Commonwealth's Brief,
at 11-18); **see also** 42 Pa.C.S.A. § 5552(a).

intended to defraud." ***Commonwealth v. Seang***, 790 A.2d 1036, 1037-38 (Pa. Super. 2001), *appeal denied*, 814 A.2d 677 (Pa. 2002) (citations omitted).

Pursuant to section 5552 of the Judicial Code, the statute of limitations for forgery is five years.  ***See*** 42 Pa.C.S.A. § 5552(b)(1).  The limitations period begins to run on the day after the offense is committed.  ***See id.*** at (b)(1), (d).  The legislature has provided:

> **(d) Commission of offense.—**An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the complicity of the defendant therein is terminated.  Time starts to run on the day after the offense is committed.

42 Pa.C.S.A. § 5552(d).

There is a limited exception to the general five-year limitations period for forgery to allow otherwise time-barred prosecutions to commence where:

> [a]ny offense a material element of which is either fraud or a breach of fiduciary obligation **within one year after discovery of the offense** by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is himself not a party to the offense, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years.

42 Pa.C.S.A. § 5552(c)(1) (emphasis added).

Here, the primary source of the charges against Appellee is her alleged forgery of Sanders' signature on loan documents from 2001 through February 19, 2004, and the elements necessary to establish the forgery counts occurred during that timeframe.  (***See*** Commonwealths' Exhibit 4);

*see also Seang*, *supra*, at 1037-38.  Therefore, the five-year statute of limitations period began to run, at the latest, on February 20, 2004, and it expired five years later, on February 20, 2009.  **See** 42 Pa.C.S.A. § 5552(d). However, authorities filed the criminal complaint against Appellee on January 20, 2012, nearly three years after expiration of the applicable limitations period.  The exception for cases involving fraud set forth at section 5552(c), allowing commencement of an otherwise time-barred prosecution within **one year** of discovery of the offense, is not applicable in the instant case because Sanders "discovered" the forged signatures in June 2010, and the criminal complaint was not filed against Appellee until approximately one-and one half years later.[6]

The Commonwealth's attempt to circumvent the statute of limitations by relying on **Fisher**, **supra**, and the "continuing course of conduct" language in section 5552(d) is misguided because the facts of **Fisher** are inapposite to those of this case and, as the Commonwealth acknowledges, the **Fisher** court did not apply section 5552(d).  (**See** Commonwealth's Brief, at 14).  In **Fisher**, the defendant convinced victims to place down

_____

[6] The Commonwealth acknowledges the exception relating to offenses involving fraud set forth at section 5552(c)(1), but concedes that it does not apply to the instant case.  (**See** Commonwealth's Brief, at 14-15).  We also note that, while Sanders stated that she discovered the forgeries in 2010, she further testified that she was aware that Appellee took out the loans in her name when the parties signed the Agreement in 2004.  (**See** N.T. Preliminary Hearing, 2/28/12, at 58-60; **see also** N.T. Motion to Dismiss, 2/04/13, at 57).

payments on lake front properties by misrepresenting that the properties were buildable and approved for septic systems. *Fisher*, *supra* at 814. Fisher was convicted of multiple offenses, including forgery. *See id.* at 813. The forgery charges were brought because, as part of his scheme, Fisher intentionally altered the dates on the checks given to him by the victims. *See id.* at 815. However, unlike in the instant case, it appears that the prosecution against Fisher did commence within the five-year limitations period. *See id.* at 815-16, 818 (indicating that Fisher altered the checks in 1988 and the complaint against him was filed in 1992). Although the Commonwealth relies heavily on *Fisher*, it concedes "it is unclear whether the *Fisher* Court actually applied the conspiracy-like-conduct exception to the forgery counts because the actual forgeries may have been brought within the five-year SOL." (Commonwealth's Brief, at 13).

Moreover, unlike in the instant case, the *Fisher* Court found that Fisher continued to deceive the victims long after they signed the initial contracts. *See Fisher*, *supra* at 818. Here, the record reflects that the bank disbursed the loan monies to Sanders' account in payments from September 2001 through February 2004. (*See* Commonwealth's Exhibit 4). The Agreement signed by Sanders and Appellee in June 2004 specified the loan numbers and amounts, and Sanders made payments on the loans using money sent to her by Appellee through 2010. (*See* N.T. Preliminary Hearing, 2/28/12, at 58-60; *see also* N.T. Motion to Dismiss, 2/04/13, at 57). Thus, the record does not support the Commonwealth's position that

Appellee engaged in conspiracy-like conduct to prevent discovery of the forgeries until Sanders obtained a copy of the loan documents in June 2010. Instead, the record supports the trial court's determination that "[Appellee's] alleged illicit actions have been open and notorious . . . [t]he red flags currently brought to light . . . relating to the home equity loans were hidden in plain sight." (Trial Ct. Op., at 7).

Based on the foregoing, and mindful that we must construe statutes of limitations liberally in favor of the defendant and against the Commonwealth, **see Cardonick**, **supra** at 407, we conclude that the trial court properly dismissed the charges against Appellee as barred by the statute of limitations. **See Riding**, **supra** at 993. The Commonwealth's issue on appeal does not merit relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/2015