J-S42030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALVIANETTE A. KENNEDY, | : | |
| | : | |
| Appellant | : | No. 3612 EDA 2018 |

Appeal from the Judgment of Sentence Entered, November 14, 2018,
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s): CP-46-CR-0000647-2018.

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED OCTOBER 15, 2019**

Alvianette A. Kennedy appeals from the judgment of sentence imposed following her conviction of insurance fraud and securing execution of documents by deception.[1]  We affirm.

The relevant facts are as follows.  On October 22, 2014, Kennedy was involved in a work-related car accident.  Two months later, on December 19, 2014, Kennedy saw Anthony Salem, M.D., of Suburban Orthopedic Specialists. During the visit, Dr. Salem dictated notes regarding the appointment, which were later transcribed and placed in Kennedy's patient file.  The notes from the December 19, 2014 visit stated that Dr. Salem gave Kennedy a script

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 4117(a)(2), 4114.

which excused her from work on December 18 and 19 of 2014 due to her accident-related injuries. Per office policy, the practice also retained the carbon copy of the script for Kennedy's patient file.

On December 22, 2014, Kennedy made a claim to her insurance carrier, Esurance, for lost wages. In support of her claim, she faxed a packet of documents to Esurance. Included in the claim documents was a copy of the script from Dr. Salem. However, the script faxed to Esurance had been altered to include additional dates that Kennedy was purportedly excused from work: October 23, 2014, through December 5, 2014; and December 10-12, 2014. Based on the documentation submitted by Kennedy, Esurance issued her a check in the amount of $5,336.14 for lost wages from October 31, 2014, through the check issue date of February 27, 2015.

After a dispute emerged between Esurance and Kennedy, Esurance conducted an internal investigation. Ultimately, the alteration of the script was discovered, and Kennedy was charged with the above-mentioned offenses. At trial, the court admitted Dr. Salem's office notes, and the carbon copy of the script issued to Kennedy. The court also admitted, as Exhibit C-1, the packet of claim documents that Kennedy faxed to Esurance, which included a copy of the altered script. Following the trial, a jury found Kennedy guilty on both charges. On November 14, 2018, the trial court imposed an aggregate sentence of five years of probation, and ordered Kennedy to pay restitution to Esurance in the amount of $5,336.14. On November 27, 2018,

Kennedy filed an untimely post-sentence motion. On December 13, 2018, before the trial court ruled on the motion, Kennedy filed a notice of appeal. Both Kennedy and the trial court complied with Pa.R.A.P. 1925.

Kennedy raises the following issues for our review:

1. Was evidence sufficient to establish that Ms. Kennedy intentionally submitted a false statement to her insurer, a requisite finding to substantiate both convictions?

2. Was the Commonwealth Exhibit C-1 improperly admitted as a business record exception to hearsay?

Appellant's Brief at vi.

Kennedy's first issue challenges the sufficiency of the evidence supporting the intent element of her convictions.[2] Our standard of review of a sufficiency claim is as follows:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is

_____

[2] Both the trial court and the Commonwealth claim that Kennedy's first issue is waived based on her failure to state the issue with sufficient specificity in her Pa.R.A.P. 1925(b) concise statement. We disagree. Kennedy's first issue challenges only the sufficiency of the evidence supporting the intent element of her convictions. In her concise statement, she states "The evidence was insufficient to support the convictions. . . . The Commonwealth also failed to establish that Ms. Kennedy had the requisite intent." Concise Statement, 6/4/19, at 2-3. As we deem the issue adequately stated, we decline to find waiver.

to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Franklin***, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotation marks omitted).  The finder of fact is free to believe all, part, or none of the evidence presented, and determines the credibility of the witnesses.  ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274 (Pa. Super. 2013) (*en banc*).

A person commits the offense of insurance fraud by:

Knowingly and with the intent to defraud any insurer . . . presents or causes to be presented to any insurer . . . any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S.A. § 4117(a)(2).  A person acts "knowingly" when "[s]he is aware that it is practically certain that h[er] conduct will cause such a result."  ***Id***. § 302(b)(2)(ii).  Likewise, a person acts "intentionally" when "it is h[er] conscious object to engage in conduct of that nature or to cause such a result."  ***Id***. § 302(b)(1)(i).  In addition, section 4117 defines the term "statement," in part, as "[a]ny oral or written presentation or other evidence of loss, injury or expense, including, but not limited to, any notice, statement, proof of loss, receipt for payment, invoice, account, bill for services, diagnosis, prescription, hospital or doctor records, X-ray, test result or computer-generated document."  ***Id***. § 4117(l).  Finally, although section 4117 does not provide guidance on the meaning of the word "material," the statute does not require

an insured to cause actual injury to the insurer.  ***See Commonwealth v. Pozza***, 750 A.2d 889, 894 (Pa. Super. 2000) (under section 4117, there is no requirement that transference of insurer's property must take place before crime occurs; rather, mere submission of any false statement done knowingly and with intent to defraud is sufficient to violate statute); ***see also Commonwealth v. Riding***, 68 A.3d 990, 996 (Pa. Super. 2013) (holding that definition of fraud does not include element of detriment to victim).

A person commits the offense of securing execution of documents by deception "if by deception he causes another to execute any instrument affecting or purporting to affect or likely to affect the pecuniary interest of any person."  18 Pa.C.S.A. § 4114.

Kennedy contends that the evidence was insufficient to prove that she sent Esurance an altered document with the intent to defraud, which was a requisite finding to both criminal charges.  According to Kennedy, although the prosecution alleged that she submitted an altered doctor's script which added dates excusing her from work, the Commonwealth did not establish that she altered the script, or sent the script to Esurance, or that the script induced Esurance to pay the claim.  Kennedy acknowledges that the altered script was in Esurance's possession, but points to her own testimony that she sent an unaltered script to Esurance.  She also points out that no handwriting experts were introduced, and that neither her copy of the fax sent to Esurance,

nor the Commonwealth's copy contained a confirmation sheet listing the pages sent or received, or a date stamp documenting the transaction.[3]

Although a conviction of insurance fraud requires an intent to defraud, and a conviction for documents by deception requires an intent to deceive, rare is the occasion when a party lays bare his or her subjective intent. *Commonwealth v. Parker*, 104 A.3d 17, 24 (Pa. Super. 2014). Accordingly, the requisite intent to commit insurance fraud and documents by deception may be inferred from the surrounding circumstances. *See Commonwealth v. Sanchez*, 848 A.2d 977 (Pa. Super. 2004) (holding defendant had intent to commit insurance fraud when he signed forms in support of claim even though he knew that car in question was not insured at time of accident).

Here, the evidence introduced at trial, when viewed in the light most favorable to the Commonwealth, established that Dr. Salem issued Kennedy a script excusing her from work for two days, as indicated by his office notes and the carbon copy of the original script that his office retained. The evidence also established that Kennedy faxed documents to Esurance in support of her

---

[3] Under our appellate rules, the parties' briefs must include a discussion of each question raised on appeal and a "citation of authorities as are deemed pertinent." *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Heggins*, 809 A,2d 908, 912 n.2 (Pa. Super. 2002) (holding that an issue identified on appeal but not developed in appellant's brief is abandoned and therefore waived). In her brief, Kennedy fails to cite to, let alone discuss, any controlling case law or relevant authority which supports her claim. While we could find waiver on this basis, we decline to do so.

wage loss claim, which included an altered version of the script to which several weeks of excused work days had been added.

Based on this evidence, the jury could properly infer that Kennedy, in an attempt to obtain insurance benefits that she was not entitled to receive, intentionally provided an altered script to Esurance seeking wage loss payments for days that she was not deemed unable to work, in an attempt to defraud and deceive it. The jury, having the right to believe all, some, or none of Kennedy's case, decided that she acted with the requisite intent to defraud and deceive. Accordingly, viewed in the light most favorable to the Commonwealth, the evidence was sufficient both in quantity and quality to establish that Kennedy acted with the requisite intent to support her convictions of both insurance fraud and documents by deception. Thus, her first issue merits no relief.

In her second issue, Kennedy contends that the trial court erred by admitting the claim documents she faxed to Esurance (Exhibit C-1) under the business records exception to the hearsay rule. Our standard of review concerning the admissibility of evidence is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015).

Pennsylvania Rule of Evidence 803(6) provides that a record of an act,

event, or condition may be admitted under the following circumstances:

> (A) the record was made at or near the time by-or from information transmitted by-someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Additionally, pursuant to Pennsylvania's Uniform Business Records as

Evidence Act:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108.

Kennedy contends that the altered script was improperly introduced as

a business record through the testimony of James Cohn, one of Esurance's

Senior Special Investigators who was brought in to investigate her claim.

Kennedy points out that Mr. Cohn was not a percipient witness to any exchange of documents between her and Esurance, and that he merely pulled the documents included in Exhibit C-1 from Esurance's computer system during his investigation. She argues that, while Mr. Cohn's testimony established that the altered script was in Esurance's possession, his testimony did not provide sufficient justification to establish that the altered script was included in the claim documents that Kennedy faxed to the insurer. According to Kennedy, Mr. Cohn was not present when the fax was received by Esurance, and did not personally enter, or observe another individual entering, the fax into Esurance's document retention system. Kennedy further argues that, although Mr. Cohn testified that documents associated with a claim are either scanned into the system or are automatically uploaded, he did not specify whether the faxed documents were scanned or uploaded, or whether they were stored in the system as one document or as multiple documents. Kennedy also complains that the documents included in the fax did not have a date or time stamp, indicating either when they passed through a fax machine or when they were uploaded into the Esurance document retention system. She additionally points out that the script was not listed on the fax cover page as included in the documents faxed to Esurance.

Kennedy misapprehends the nature of the Uniform Business Records as Evidence Act. As this Court has explained:

> It is not essential . . . to produce either the person who made the entries or the custodian of the record at the time the entries were

made. Moreover, the law does not require that a witness qualifying business records even have a personal knowledge of the facts reported in the business record. As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence.

**Bayview Loan Servicing, LLC v. Wicker**, 163 A.3d 1039, 1048 (Pa. Super. 2017) (quoting **Boyle v. Steinman**, 631 A.2d 1025, 1032-33 (internal citations omitted)).

The trial court determined that Mr. Cohn provided sufficient information relating to the preparation and maintenance of Esurance's document retention system to justify a presumption of trustworthiness of its business records, including Exhibit C-1. The court explained the basis for its ruling, as follows:

James Cohn, a senior special investigator for Esurance, has been with the company for ten (10) years, exercising his role as investigator of potential fraudulent or inaccurate claims. In April 2015, Mr. Cohn was tasked with investigating [Kennedy's] insurance claim. Mr. Cohn accessed [Kennedy's] file off of the Esurance computer system for his internal investigation, including the fax submitted as [Exhibit] C-1. Mr. Cohn uses and is familiar with Docfinity, the Esurance centralized document system, and was able to explain in detail how the documents were loaded and maintained within the system. He testified that contemporaneous with the document being received, as part of the ordinary course of business the document is either uploaded directly or scanned into the system. It was Mr. Cohn's testimony that the fax entered into evidence as [Exhibit] C-1 was scanned into the Docfinity system. As such[,] Exhibit C-1 was sufficiently authenticated by Mr. Cohn and, therefore, fits squarely within the business record hearsay exception.

Trial Court Opinion, 2/11/19, at 7-8 (citations to the record and footnote omitted).

We discern no abuse of discretion in the trial court's evidentiary ruling.

Accordingly, Kennedy's second issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/19